## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Cynthia Miller,

                Plaintiff,

          v.

Grand Holdings, Inc., d/b/a
Champion Air,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-2688 ADM/AJB

---

Richard A. Williams, Jr., Esq., Williams & Iversen, Roseville, MN, appeared for and on behalf of Plaintiff.

Susan K. Fitzke, Esq., Meagher & Geer, P.L.L.P., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On July 1, 2005, oral argument was heard before the undersigned United States District Judge on Grand Holdings, Inc., d/b/a Champion Air's ("Champion" or "Defendant") Motion for Summary Judgment [Docket No. 18]. In her Complaint [Docket No. 1], Cynthia Miller ("Miller" or "Plaintiff") alleges Defendant violated: (1) Title VII and the Minnesota Human Rights Act's ("MHRA") prohibitions against gender discrimination and retaliation; (2) the MHRA's prohibition against discrimination based on family status; and (3) the Minnesota's Whistleblower Act ("MWA"). For the reasons set forth below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

## II. BACKGROUND[1]

Miller began working at Champion as a materials assistant in the late 1990s.  Miller Dep. (Ryan Aff. [Docket No. 22] Ex. A) at 25, 67-68.  Throughout her tenure, Miller reported to seven different director of materials.  Id. at 26-27.  In 2000, Miller's primary function became invoice processing.  Id. at 27-28, 67.  Her title was changed to account coordinator to reflect her duties. Id. at 67-68.

In March 1999, Champion hired Robert Stech as a financial controller for technical operations.  Stech Dep. (Ryan Aff. Ex. B) at 25.  Stech did not become a member of the materials department until June 2000, when he was promoted to operations manager for materials.  Id. at 25, 37-39.

In February 2000, before Stech joined the materials department, Miller made a delivery to Stech.  Id. at 44-45.  During the delivery, Miller contends Stech made reference to whether Miller was sure she wanted to have children.  Miller Dep. at 44-45.  Miller regarded this remark as a reference to a former miscarriage and whether she wanted to become pregnant again.  Id. Miller asked the director of materials what she should do about the comment but the director left Champion within the week and no action was taken.  Id. at 46-47.

Between October 2000 and January 2001, Miller claims Stech began staring at her in what Miller presumed was an attempt to determine whether she was pregnant.  Id. at 127-29, 133.  By January 2001, Miller was, in fact, five months pregnant but had not yet announced her pregnancy.  Id. at 127-29, 133, 148, 165.  During this time, Miller overheard approximately two

---

[1] For purposes of the instant Motion, the facts are viewed in the light most favorable to the nonmovant.  See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

conversations she assumes were about her in which Stech and another employee, Ed Mays used

the word "pregnancy."   Id. at 158-59.  Mays subsequently told Miller that Stech had asked

whether she was pregnant.  Id. at 124-26.  On January 15, 2001, Stech made a comment to Miller

criticizing her outfit due to her shape, presumably because of her pregnancy.  Id. at 131, 139,

142-43, 298-99.  Miller can not remember the exact comment.  Id. at 130-31.

On January 15, 2001, Miller telephoned Steve Spellman, Champion's CFO, and

complained about Stech's conduct.  Id. at 118, 138-39, 142.  Spellman told her to contact Mary

Eaton, Director of Human Resources.  Id. at 138, 142.  Miller relayed these incidents to Eaton,

who confronted Stech.  Id. at 139, 144-50, 159-64, 174.  He admitted to having a conversation

with Mays regarding Miller's pregnancy and Eaton told him his behavior was inappropriate.

Stech Dep. at 35-37.  Stech denied the other allegations but agreed his behavior warranted an

apology.  Id.  Eaton informed Miller that Stech had admitted to and apologized for his conduct.

Miller Dep. at 180-82.  Miller wanted to know whether Stech would be disciplined and wanted

documentation placed in her and Stech's personnel files.  Id. at 181-85, 187.  Eaton responded

that discipline information was confidential.  Id. at 181-83.  She requested Miller promptly

report additional inappropriate conduct.  Id. at 182, 187, 193.

Following her January 2001 complaint, Miller claims she continued to have problems

with Stech.  Id. at 244-45.  She believed he was constantly watching her and noting the times she

came and went.  Id. at 132-33, 196-97.  Conflicts with Stech subsided in February 2002 once

Miller requested to move her office.  Id. at 201.  Miller also admits the inappropriate staring she

complained about in the January 2001 complaint ceased in December 2001, when the materials

department moved to Champion's corporate office.  Id. at 136-37.  Miller was on maternity leave

from April 28, 2001 through July 23, 2001.

In February 2002, Tim Knutson became the director of materials.  Id. at 88.  Within the first month of his employment, Miller informed Knutson of the January 2001 complaint and her belief it was still unresolved.  Miller Dep. at 267-69; Knutson Dep. (Ryan Aff. Ex. C) at 9.  She did not provide additional examples of inappropriate behavior by Stech.  Miller Dep. at 269-70.  Knutson then spoke with Susan Mitchell, the new Human Resources Director, about the January 2001 complaint.  Knutson Dep. at 9.  Mitchell told Knutson the complaint was investigated and closed.  Id.  Knutson relayed this information to Miller.  Id.  When Miller disagreed with this conclusion, Knutson told her to address any new complaints or outstanding concerns to human resources.  Id. at 10.

On March 20, 2002, Miller reiterated her complaints about Stech to Mitchell.  Miller Dep. at 289, 321; Mitchell Dep. (Ryan Aff. Ex. E) at 7-8, 13.  Although she renewed her complaints about the incidents that spawned the January 2001 complaint, she stated Stech had not since commented on her clothing or appearance or made other inappropriate sexual comments.  Miller Dep. at 335-37; Mitchell Dep. at 10-11.  She did claim Stech's tone was harsh and demeaning but admitted that Stech used the same tone and interaction with others, including male employees and vendors.  Miller Dep. at 43-44, 252, 290, 305, 330, 338; Mitchell Dep. at 9-10.  Miller also believed Stech was discriminating against her based on her belief that she and Stech were both hired for the same position and both reported to the director of materials.  Mitchell Dep. at 8-9.  However, Miller believed her responsibilities had decreased while Stech's had increased.  Id.  Mitchell told Miller that she and Stech did not hold equivalent positions.  Id. at 16.

On March 22, 2002, Mitchell e-mailed Miller a summary of their meeting for her to review and confirm its accuracy.  Miller Dep. at 322; 3/22/02 E-mail from Mitchell to Miller and Attachment (Ryan Aff. Ex. J).  Miller responded to Mitchell on the following day with the statement "please consider this a written complaint against Bob Stech."  Miller Dep. at 322; 8/28/02 E-Mail from Miller to Mitchell (Ryan Aff. Ex. G)[2].  The e-mail did not contest Mitchell's account of the conversation or add additional complaints.  8/28/02 E-mail from Miller to Mitchell.

On August 28, 2002, Miller again e-mailed Mitchell claiming her March 22, 2002 e-mail "never went anywhere."  Id.; Miller Dep. at 323.  Mitchell told Miller any complaint needed to provide details of the alleged incidents.  Miller Dep. at 324-25; 8/28/02 E-mail from Mitchell to Miller (Ryan Aff. Ex. H).  Miller subsequently submitted a written complaint against Stech.  Miller Dep. at 326; 8/28/02 Written Complaint (Ryan Aff. Ex. I).  The complaint reiterated the incidents included in the January 2001 complaint but did not allege any additional incidents.  Miller Dep. at 328-29; 8/28/02 Written Complaint.

On August 28, 2002, Stech received a written warning concerning his tone and method of communication with a male employee.  Stech Dep. at 52; Written Warning (Ryan Aff. Ex. L).  Stech also received a reprimand for his interaction with another male employee.  Stech Dep. at 52.

In the spring of 2002 Champion began implementing the Trax-Great Plains software interface ("Trax").  Rosholt Dep. (Ryan Aff. Ex. D) at 15-16; Knutson Dep. at 31-32.  The goal

---

[2]  The 8/28/02 E-Mail from Miller to Mitchell includes a record of the response sent from Miller to Mitchell on March 22, 2002.

of this software package was to automate invoice processing and increase efficiency.  Rosholt

Dep. at 16-17; Knutson Dep. at 32.  Champion contends Trax was completed in late November

or early December of 2002.  Knutson Dep. at 32, 59.  Upon its completion, Trax automated much

of Miller's invoice processing duties, limiting her job responsibilities to inputting invoices into

the computer and forwarding the entered invoices via inter-office mail to accounting.  Miller

Dep. at 99; Knutson Dep. at 31-33, 38, 44, 50, 58-59.  In November 2002, Knutson and Jacob

Rosholt, Vice President of Technical Operations, determined the account coordinator position

should be eliminated because the duties could be accomplished in approximately one hour each

day.  Knutson Dep. at 33, 47, 60-61; Mitchell Dep. at 17-18; Stech Dep. at 66, 72; Trax

Transaction (Ryan Aff. Ex. M).  Because Miller was a veteran employee, Mitchell asked

Knutson and Rosholt whether Miller could serve in another position in the materials group.

Mitchell Dep. at 24-26.  The three determined that Miller did not have the appropriate skill or

experience for any other position.  Id.  Because the holiday season was approaching, Rosholt,

Knutson and Mitchell determined Miller's termination would not occur until after January 1,

2003.  Mitchell Dep. at 28; Knutson Dep. at 61-62.  According to Knutson, Trax was completed

in the first week of December 2002.  Id. at 32, 59.  At that time, Knutson and Rosholt determined

Miller's effective date of termination would be January 7, 2003.  Id. at 61-62; Rosholt Dep. at

26.

On December 19, 2002, Miller was sorting mail when she witnessed Stech enter the

mailroom and look through the mail.  Miller Dep. at 368, 371.  Miller noticed two packages

wrapped in yellow bubble packs, perhaps vendor gifts, addressed to other employees.  Miller

Dep. at 369-71.  Stech remained in the mailroom when Miller left.  Miller Dep. at 369-71.

6

Shortly thereafter, Miller returned and noticed the two packages were absent.  Miller Dep. at

377.  After failing to relocate the packages, Miller concluded Stech took the packages and went

to his cube to investigate.  Miller Dep. at 377-78.  On her way to Stech's cube, Miller observed

him carrying materials out to his car.  Mailroom Incident Report (Ryan Aff. Ex. K).  In his

absence, Miller and another employee observed empty yellow bubble packs addressed to two

other employees on the floor under Stech's desk.  Id.  Miller reported the incident to human

resources.  Miller Dep. at 377-78, 380-82.

On January 7, 2003, Miller was informed her position was being eliminated and she was

Knutson was responsible for investigating Miller's mailroom allegation.  Knutson Dep. at

19.  Knutson searched Stech's cube but did not find the packages or the bubble packs.  Id. at 20.

When confronted, Stech also denied taking the packages.  Knutson Dep. at 20-21, 27-28, 31;

Miller Dep. at 384.  Believing Knutson was covering for Stech, Miller then performed a cursory

search of Knutson's office to ensure the packages were not being hidden there.  Miller Dep. at

385-86; Knutson Dep. at 20-21.  The packages were never found and no employee was

disciplined as a result of the incident.  Knutson Dep. at 31.

On January 7, 2003, Miller was informed her position was being eliminated and she was

terminated, effective immediately.  Miller Dep. at 388-89.  Miller does not remember further

details of the meeting but Knutson claims she was told her position was being eliminated as a

result of the efficiencies realized by Trax and because of financial efficiencies.  Id.; Knutson Aff.

[Docket No. 23] ¶ 5.[3]

On September 12, 2003, Miller filed a charge of discrimination with the EEOC.  EEOC

---

[3]  The Knutson Affidavit omits a Paragraph 4.  As a result, the Paragraph designated as
Paragraph 5 is misnumbered.  However, for ease of reference, the Court will refer to the
paragraphs as numbered in the affidavit.

Charge (Ryan Aff. Ex. O).  In Champion's position statement to the EEOC, Mitchell reported

Trax was not completed until Fall 2003.  Position Statement ([Docket No. 26] Ex. J).  The EEOC

concluded insufficient evidence of discrimination or retaliation existed and issued Plaintiff a

right to sue letter.  EEOC Dismissal (Ryan Aff. Ex. P).

### III.  DISCUSSION

#### A.    Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion

for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party

may not "rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953,

957 (8th Cir. 1995).

#### B.    Title VII and MHRA Discrimination Claims

Plaintiff claims Defendant's conduct impermissibly discriminated against her on the basis

of gender and familial status.  Both Title VII and the MHRA prohibit employers from

discriminating because of an employee's sex.  42 U.S.C. § 2000e, et seq.; Minn. Stat. § 363A.08.

Both Title VII and MHRA claims are analyzed under the same rubric.  Mems v. City of St. Paul,

224 F.3d 735, 738 (8th Cir. 2000) (citations omitted).

**1.     Statute of Limitations on Title VII and MHRA Discrimination and Hostile Work Environment Claims**

Defendant claims Plaintiff's Title VII and MHRA claims are time barred.  Under Title VII, a plaintiff must file a charge within 300 days of the challenged conduct.  42 U.S.C. § 2000e-5.  Similarly, the MHRA requires a plaintiff file a charge or commence litigation within 365 days of the alleged discriminatory conduct.  Minn. Stat. § 363.06, subd. 3.  In hostile work environment claims, a claim is timely only if at least one act that is alleged to cause the hostile environment occurred within the limitations period.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117-18 (2002); Wilson v. Brinker Int'l, Inc., 382 F.3d 765 (8th Cir. 2004).  Both Title VII and the MHRA recognize the doctrine of continuing violations.  Where an unlawful employment practice manifests itself over time, rather than in a series of discrete acts, a plaintiff need not prove the entire violation occurred within the actionable period, but only that "at least one incident of harassment occurred within the limitations period."  Giuliani v. Stuart Corp., 512 N.W.2d 589, 595 (Minn. Ct. App. 1994) (citations omitted).

> The continuing-violation theory extends the statute of limitations where there is "proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue for so long as to amount to a discriminatory policy or practice."

Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 n.4 (2d Cir. 2000) (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1988)).

In the instant case, Plaintiff alleges four distinct incidents of inappropriate activity: (1) Stech asking her whether she was sure she wanted to have a child; (2) Stech staring at her in an attempt to discern if she was pregnant; (3) Stech asking other employees whether she was

pregnant; and (4) Stech making a critical comment concerning the way she looked in her clothes

due to the shape of her body while pregnant.  All of these incidents were chronicled in Plaintiff's

January 2001 complaint.  Plaintiff has cited no specific examples or evidence to support an

assertion that Stech continued to make objectionable remarks after January 2001.  In fact, in her

deposition, Miller testified Stech did not make any further comments regarding her clothing.

Miller Dep. at 130-31.  Miller also admits that her March 20, 2002 and August 28, 2002

complaints did not report any new incidents of harassment but merely reiterated the occurrences

included in the January 2001 complaint.  Miller Dep. at 289-90, 328-330; Mitchell Dep. at 9-11.

At the March 20, 2002 meeting between Miller and Mitchell, Miller admitted Stech had not

commented on her clothing or appearance or done anything else that could be construed as

sexual in nature.  Miller Dep. at 335-37; Mitchell Dep. at 10-11.  Miller did complain that Stech

continued to watch her following resolution of the January 2001 complaint; however, she

testified this behavior ended in December 2001 when the materials department moved to

Champion's corporate office.  Miller Dep. at 136-37.

During the period in which Miller and Stech both worked at Champion, Miller

continually complained of Stech's harsh and demeaning treatment and tone of voice.  Miller

Dep. at 122, 166-68, 269-70, 290, 330, 338; Mitchell Dep. at 9-10.  However, Miller

acknowledged Stech treated male and female employees and vendors in the same manner.

Miller Dep. at 43, 252, 305, 396-97.  Stech also received multiple warnings for using an

inappropriate tone and method of communication with male employees.  Knutson Dep. at 78;

Stech Dep. at 52; Written Warning.  Plaintiff cannot show Defendant spoke to her in a harsh and

inappropriate tone because of her sex.  See Deneen v. Northwest Airlines, Inc., 132 F.3d 431,

436-37 (8th Cir. 1998).

As a result, the final discriminatory incident reported by Miller was the inappropriate staring that she admits ended in December 2001.  Miller Dep. at 136-37.  Therefore, Miller's Title VII claims are time barred if they were not filed within 300 days, while her MHRA claims are time barred if they were not filed within 365 days.  Miller did not file her charge with the EEOC until September 12, 2003, well after the time limits imposed by both statutes.  Similarly, none of the conduct occurred within the limitations period required to support a hostile work environment claim.

Although Plaintiff admits Stech spoke in a harsh and demeaning tone to all employees, male or female, Plaintiff argues the disparaging comments directed at her were caused by her January 2001 complaint against him.  As a result, she claims the earlier incidents are exempt from the limitations periods under the continuing violations doctrine.  Plaintiff has offered no support for this conclusory allegation and nothing in the record indicates Stech's comments, subsequent to January 2001, implicated gender or familial status.  Consequently, these comments do not invoke application of the continuing violations doctrine.  Finally, Plaintiff argues the March 20, 2002 and August 28, 2002 complaints support her continuing violations argument.  However, these complaints reported no new incidents of discriminatory conduct.  It would eviscerate the limitations periods in Title VII and the MHRA if a plaintiff could invoke the continuing violations doctrine simply by periodically referring to distant incidents.  As a result, Plaintiff's gender and familial status discrimination claims and hostile work environment claims under Title VII and the MHRA are time barred and must be dismissed.

### 2.    Merits of Discrimination and Hostile Work Environment Claims

Even if Plaintiff's Title VII and MHRA discrimination claims were not time barred, she would be unable to succeed on the merits.  Plaintiff alleges she was discriminated against on the basis of gender and familial status and subjected to a hostile work environment.  Plaintiff's Title VII and MHRA claims are analyzed under the burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134-36 (8th Cir. 1999) (applying framework to Title VII claim).  Under the McDonnell Douglas framework, the plaintiff employee must initially establish a prima facie case of discrimination.  This showing creates a presumption that the employer acted unlawfully.  Id., at 1134-36.  The burden of production then shifts to the employer who must provide legitimate, non-discriminatory reasons for the adverse employment action.  Id.  If the defendant meets this requirement, the burden returns to the plaintiff to show that the employer's explanation is pretextual.  Id.

### i.    Gender Discrimination Claim

To demonstrate a prima facie case of disparate treatment on the basis of sex, a plaintiff must prove: (1) she belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) non-members of her class were treated differently.  See Bredding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999).  The fourth element of a discrimination claim has been described as requiring some "evidence that would give rise to an inference of unlawful discrimination."  Putnam Search Term End v. Unity Health Sys., 348 F.3d 732, 735-36 (8th Cir. 2003).

Defendant does not dispute Plaintiff was a member of a protected class or that she was qualified to perform her job but does contest the remaining elements.

12

To establish an adverse employment action, "an employee must show a tangible change in duties or working conditions that constituted a material disadvantage." Burchett v. Target Corp., 340 F.3d 510, 518 (8th Cir. 2003).  It is unclear from the Complaint what adverse employment action Plaintiff is alleged to have suffered.  Clearly, termination is an adverse employment action, however, the timing of Plaintiff's termination is too far removed from the three incidents alleged in the January 2001 complaint to constitute an adverse employment action for purposes of her discrimination claim.  Furthermore, Miller does not claim she was terminated as a result of her gender.  Miller Dep. at 390.

During depositions, Plaintiff implied a causal connection between Stech and her receipt of poor reviews in February 2000 and 2002, a failure to receive salary increases when requested, and the diminishment of job responsibilities and her relationship with her director.  However, none of these actions are alleged in Plaintiff's Complaint and, thus, can not serve as the basis for an adverse employment action.  Further, the Record shows Miller received several salary increases while at Champion.  Miller Dep. at 310-12.  Failure to receive a salary increase on demand does not constitute an adverse employment action.  Cruzan v. Minn. Public Sch. Sys., 165 F. Supp. 2d 964, 968 (D. Minn. 2001).  Miller's overall performance rating on both reviews was "good."  A poor performance review may constitute an adverse employment action, but only when used to "detrimentally alter the terms or conditions of the recipient's employment." Spears v. Missouri Dep't of Corrections & Human Resources, 210 F.3d 850, 854 (8th Cir. 2000).  A performance review rating that is not inherently negative cannot establish an adverse employment action.  LaCroix v. Sears Roebuck, & Co., 240 F.3d 688, 691-92 (8th Cir. 2001).  Finally, Miller acknowledged her job responsibilities began diminishing and her primary duty

became invoice processing before Stech transferred to materials in June 2000.  Miller Dep. at 66-72.  It is also clear that Miller and Stech never held the same position, as Stech was a management-level employee, while Miller was not.[4]  Miller Dep. at 102-03; Stech Dep. at 37. Therefore, Miller cannot establish she suffered an adverse employment action near the time frame when Stech's inappropriate behavior occurred.

Finally, Miller has not satisfied her burden of presenting facts which permit an inference of discrimination.  Miller has acknowledged that Stech spoke in a harsh and demeaning tone to employees of both genders.  She has also not provided any evidence that the alleged adverse employment actions - her failure to receive raises when requested, her performance reviews, and her diminished job responsibilities and relationship with her director - were linked to her gender. Any comparison between Miller and Stech's responsibilities and relationships to the director is inappropriate because the two were not similarly situated.  Consequently, Miller's gender discrimination claim must be dismissed.

### ii.    Familial Status Discrimination Claim

Plaintiff also claims Defendant's actions constitute discrimination based on her familial status.[5]  Although neither the MHRA nor Title VII explicitly recognize discrimination based upon familial status, courts have considered familial status in analyzing gender discrimination claims under a "sex plus" theory.  Schmittou v. Wal-Mart Stores, Inc., 2003 U.S.Dist. LEXIS 15767, *26-27 (D. Minn. Aug. 22, 2003); Pullar v. Ind. Sch. Dist. No. 701, 582 N.W.2d 273,

---

[4]  At no time, however, did Miller report to Stech.  Miller Dep. at 104.
[5]  Plaintiff did not address her familial status discrimination claim in Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J.  Although the claim is arguably waived, the Court will briefly address its merits.

14

276-77 (Minn. Ct. App. 1998).  To prevail under a "sex plus" theory, plaintiffs must show

disparate treatment of a sub-class within a protected class on the basis of an immutable

characteristic.  Schmittou, 2003 U.S.Dist. LEXIS 15767 at *26-27; Pullar, 582 N.W.2d at 276-

77.  In the instant case, Plaintiff must show Defendant discriminated against a sub-class of

women with children and that a similarly situated sub-class of men with children were treated

more favorably.  Schmittou, 2003 U.S.Dist. LEXIS 15767 at *26-27; Pullar, 582 N.W.2d at 276-

77.  Plaintiff has not demonstrated similarly situated men with children were treated more

favorably.  In fact, Plaintiff has not provided any information about the manner in which men

were treated by Champion, other than to testify that Stech spoke to both men and women in a

harsh and demeaning manner.  As a result, Plaintiff's discrimination claim based on familial

status must be dismissed.

### iii.     Hostile Work Environment Claim

To demonstrate a prima facie hostile work environment claim, Plaintiff must prove the

following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome

harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition,

or privilege of employment; and, in cases involving non-supervisory employees, (5) the

employer knew or should have known of the harassment and failed to take prompt and effective

remedial action.  See Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999).  Further, the

harassment must be "severe or pervasive enough to create an objectively hostile or abusive work

environment" and the victim must subjectively believe her working conditions have been altered.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

It is unnecessary to evaluate each of the aforementioned factors to conclude Plaintiff has

15

not established a prima facie hostile work environment claim.  For reasons already articulated, Plaintiff cannot show comments made by Stech in a harsh and demeaning tone were based on sex.  Therefore, she must show inappropriate staring, inquiries about whether she was pregnant, a comment about whether she was sure she wanted to have children and a comment critical of her shape in her clothes is so "severe or pervasive" as to "create an objectively hostile or abusive work environment."  Harris, 510 U.S. at 21.

In determining whether an environment was hostile, courts must consider the totality of the circumstances, including the "frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris, 510 U.S. at 23).  Furthermore, "simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Id. at 788.

The incidents relied upon by Plaintiff cannot meet the Eighth Circuit's high standard for a hostile work environment.  Plaintiff can only vaguely recollect the nature and content of the comments and broadly asserts that Stech stared at her in an "uncomfortable" manner.  Miller Dep. at 45-46, 130-32.  Neither the staring nor the comments were physically threatening or humiliating and Plaintiff has not shown they unreasonably affected her work performance.  Stech's comments, although unfortunate and inappropriate, are isolated offensive utterances and rude behavior by a coworker.  Cf. Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (experiencing unpleasant conduct and rude comments was not severe or pervasive harassment altering conditions of employment).  As the Eighth Circuit has noted, "Title VII is not 'a general

civility code for the American workplace.'" Thorn v. Amalgamated Transit Union, 305 F.3d 826, 831 (8th Cir. 2002) (citations omitted). The conduct cited by Plaintiff does not rise to the level necessary for a hostile work environment claim. See Duncan v. General Motors Corp., 300 F.3d 928 (8th Cir. 2002) (finding plaintiff whose supervisor asked her out on a date and engaged in a series of acts more offensive than the conduct Plaintiff asserts); Alagna v. SmithvilleR-II, 324 F.3d. 975 (8th Cir. 2003) (holding a female teacher was not subject to a hostile work environment when a male teacher touched her, commented on her appearance, said "I love you", exhibited a sexual demeanor, called her at home, and gave her two romance novels).

**C.     Retaliation Claims**

Plaintiff claims she was terminated in retaliation for filing complaints concerning Stech's conduct in violation of Title VII and the MHRA. 42 U.S.C. § 2000e, et seq.; Minn. Stat. § 363A.15. Claims of retaliation are also analyzed under the McDonnell Douglas burden shifting framework. To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) the employer subjected plaintiff to an adverse employment action; and (3) a causal connection existed between the two. Kipp v. Missouri Highway & Transp. Comm'n, 280 F.3d 893, 896 (8th Cir. 2002). The same standards apply to retaliation claims brought under the MHRA. Buettner v. Easter Arch Coal Sales, 216 F.3d 707, 714 (8th Cir. 2000).

Plaintiff can satisfy the first two elements of a prima facie retaliation claim. Her complaints to Champion's human resources department about Stech's actions constitute statutorily protected conduct and her termination clearly is an adverse employment action. However, Plaintiff cannot satisfy the causation requirement of a prima facie retaliation claim.

Plaintiff has offered no evidence to suggest that an employer's "retaliatory motive played a part in the adverse employment action." Kipp, 280 F.3d at 897 (citation omitted). Ultimately, Plaintiff argues that she repeatedly complained to Champion management about Stech and was ultimately terminated. Plaintiff initially complained about Stech's conduct in January 2001. She complained about the same conduct again in March 2002 and August 2002. 3/22/02 E-mail from Mitchell to Miller; 8/28/02 E-mail from Miller to Mitchell; Miller Dep. at 328-29. Defendant claims the decision to eliminate Miller's position was made in early November 2002, although Plaintiff was not terminated until January 7, 2003. Knutson Dep. at 33, 47, 60-62; Mitchell Dep. at 17-18; Rosholt Dep. at 26.

The Eighth Circuit has repeatedly held a temporal connection alone is generally insufficient to establish causation. See, e.g., id. In addition, the Eighth Circuit has found an interval of two months between the protected activity and the adverse employment action is too long to establish a temporal connection. Id. Plaintiff's complaints occurred over an extended period from January 2001 to August 2002. The later complaints did not raise any issues not previously addressed in the January 2001 complaint. Plaintiff does not allege Champion retaliated against her after she filed the January 2001 complaint. The period between her initial complaint and her termination is sufficiently long to dilute any inference of causation. In fact, the two month period between her August 2002 complaint and the proffered November 2002 decision to terminate her, even without considering the January 7, 2003 date of her termination, is sufficiently long to dilute any inference of causation.

Plaintiff asserted at oral argument that Stech retaliated against Miller for complaining about his conduct by speaking to her in a harsh and demeaning tone. Although Stech spoke to

both male and female employees in this tone, Plaintiff argued Stech's treatment of Miller was motivated by her past complaint.  This argument must fail for several reasons.  First, it was not pled in the Complaint.  Second, as discussed, Plaintiff has neither pled nor shown Miller suffered an adverse employment action other than her termination.  Third, Plaintiff has provided no evidence from which to infer Stech's tone was motivated by an intent to retaliate against Miller for her complaints.  Finally, Plaintiff has not shown any connection between Stech's harsh comments and any adverse employment action suffered by Miller.

As a result, Plaintiff has not established a prima facie case of retaliation under Title VII or the MHRA and these claims are dismissed.

**D.     Minnesota Whistleblower Act**

Plaintiff also contends Champion terminated her in retaliation for reporting that Stech took mail addressed to other employees from the mailroom.  The MWA prohibits discharge of an employee because of a good faith report of illegal activity.  Minn. Stat. § 181.932.  MWA claims are analyzed under the McDonnell Douglas burden shifting framework.  Thompson v. Campbell, 845 F. Supp. 665, 674 (D. Minn. 1994).  To establish a prima facie retaliation claim under the MWA, a plaintiff must demonstrate that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two.  Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).  An employee may prove causation "with circumstantial evidence that justifies an inference of retaliatory motive."  Id. at 632.

Plaintiff participated in statutorily protected conduct when she reported to Champion management her suspicion that Stech was taking other employees' mail.  An observer of Stech's

activity in the mailroom, Miller had an "objective basis in fact" to belief that Stech's alleged actions violated state or federal law.  See Minn. Stat. § 181.932.  Plaintiff's termination was an adverse employment action.  Having satisfied the first two prongs of a prima facie MWA retaliation claim, Plaintiff must show a causal connection between the statutorily protected conduct and her termination.  Plaintiff reported Stech for allegedly taking other employees' mail on December 19, 2002 and was terminated, without prior notice, on January 7, 2003. "Close temporal proximity between a complaint . . . and termination has been held to support an inference of reprisal."  Cokley v. City of Otsego, 623 N.W.2d 625, 633 (Minn. Ct. App. 2001). Plaintiff was terminated by Knutson, the person responsible for investigating her complaint. Coupled with other circumstantial evidence in the record, Plaintiff has produced sufficient evidence to satisfy a prima facie case under the MWA.

Defendant also meets its burden of setting forth a legitimate, non-discriminatory motive for Plaintiff's termination.  Defendant claims Miller was terminated because the efficiencies of Trax made her invoice processing position unnecessary and because she did not possess the skills or experience to perform another position.  Knutson claims the decision to terminate Miller's position was made, after speaking with Rosholt and Mitchell, in early November 2002, long before Miller reported Stech was allegedly taking other employees' mail.  Knutson Dep. at 33, 47, 60-62.  Because Miller was a long term employee, Mitchell testified she pressed Knutson and Rosholt as to whether Miller could fill another position.  Miller Dep. at 24-26.  Once it was determined there was no other position for Miller, the three agreed that Miller should not be terminated until after the first of the year because of the approaching holiday season.  Mitchell Dep. at 24-26, 28; Knutson Dep. at 61-62.  In the first week of December, when Trax was

completed and prior to the Mailroom Incident, Knutson and Rosholt agreed Miller would be terminated on January 7, 2003.  Knutson Dep. at 61-62; Rosholt Dep. at 26.  On January 7, 2003, Knutson stated he told Miller her position was being eliminated because of efficiencies provided by Trax and because of financial considerations.  Knutson Aff. ¶ 5.

Although Champion satisfied its burden of proffering a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff has presented sufficient circumstantial evidence to call into question this explanation.  First, and most importantly, Miller was terminated without notice on January 7, 2003.  This sudden termination appears at odds with the concern Knutson, Rosholt and Mitchell allegedly showed by considering whether Miller was qualified to fill another position in the department and by delaying telling of her impending termination until after the holidays.

Second, no documentation exists to support Champion's assertion that Knutson, Rosholt and Mitchell agreed to terminate Miller as a result of the efficiencies provided by Trax.  Mitchell Dep. at 28; Rosholt Dep. at 24-25.  There is no record of the November 2002 meeting or the discussion in the first week of December between Knutson and Rosholt setting Miller's termination date.  Mitchell Dep. at 28; Rosholt Dep. at 24-25, 31.  No record exists of the decision being communicated to the finance department.  Rosholt Dep. at 29-32.  Defendant relies on after-the-fact deposition testimony and Champion's position statement in response to Miller's EEOC charge, rather than contemporaneous written records, for its argument that Miller was terminated because efficiencies realized through Trax made her position unnecessary.

Third, the position statement submitted by Champion and prepared by Mitchell states that Trax was not completed until Fall 2003, several months after Miller's termination.  Position

Statement.  Champion contends this date is a typographical error.  Fourth, Miller's job description was kept on file and her position remained in the budget for all of 2003.  Rosholt Dep. at 18-19.  Plaintiff argues the continued existence of Miller's former position and the corresponding job description suggests Trax had not made her position unnecessary by fall of 2002.  Champion argues the annual budget process was completed by the time the decision to terminate Miller was made and that the job position was tied to the budget.  Id.  Neither the position nor the job description could be eliminated from the budget until the budgeting process was completed for fiscal year 2003.

Finally, in August 2004, in preparation for this litigation, Knutson asked Stech to reproduce a report from 2002 detailing the volume of transactions completed by Trax per week.  Trax Report; Stech Dep. at 66, 72.  At his deposition, Knutson argued the report conclusively showed when Trax went into effect.  Knutson Dep. at 60.  In response to subsequent questions from Plaintiff's counsel, Knutson admitted the report only showed how much time it took to input invoices using Trax and it did not indicate when Trax was completed.  Id. at 62-64.  When viewed in the light most favorable to Plaintiff, the Court finds a reasonable jury could conclude Champion's proffered reason for terminating Miller was pretextual.  As a result, Plaintiff's MWA retaliation claim survives summary judgment.

For the aforementioned reasons, Plaintiff's Title VII and MHRA discrimination, hostile work environment, and retaliation claims (Counts I, II, III, and IV) are dismissed.  Plaintiff's MWA claim (Count V) survives summary judgment.

**IV.  CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 18] is **GRANTED** as to Counts I, II, III, and IV and **DENIED** as to Count V.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 26, 2005.